**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**UNITED STATES OF AMERICA,**

**Plaintiff,** :

**v.**

**Case No. 2:26-cr-4(2)**
**Chief Judge Sarah D. Morrison**

**ASHTON DARKS** :

**Defendant.**

# OPINION AND ORDER

In January 2024, Columbus, Ohio Division of Police ("CDP") Detective James Kirk executed a search warrant for a residence suspected of being used for narcotics trafficking. During the search, he encountered Ashton Darks, who Detective Kirk believed to be involved in the trafficking operation. He also found two cell phones next to items consistent with drug trafficking. Based on his experience in narcotics investigations, Detective Kirk believed the cell phones would contain additional evidence of the alleged trafficking conspiracy, so he sought and obtained a warrant to search the two cell phones.

Two years later, Mr. Darks and two co-conspirators were indicted for conspiracy to distribute and possess controlled substances. (ECF No. 6.) Mr. Darks moved to suppress evidence obtained from the two cell phones. (Mot., ECF No. 45.) That Motion is ripe and, for the reasons below, it is **DENIED**.

## I. FACTUAL BACKGROUND[1]

In November 2023, CDP received a complaint regarding suspected narcotics trafficking from a residence on Avondale Avenue. (Kirk Aff., PAGEID # 149.) Over the next six weeks, Columbus Police conducted three controlled purchases of narcotics from occupants inside the Avondale residence. (*Id.*) At the same time, Detective Kirk surveilled the residence. Detective Kirk has 16 years of law enforcement experience, including 10 years investigating criminal street gang activity and narcotics-related crimes. (*Id.*)

During his surveillance, Detective Kirk observed "several indicators" of narcotics trafficking, including heavy foot traffic from the same rear door of the residence used for the controlled purchases. (*Id.*, PAGEID # 150.) He also positively identified five individuals suspected of trafficking narcotics, including Mr. Darks, who were familiar to him from prior drug-related arrests. (*Id.*) Detective Kirk observed Mr. Darks routinely returning to the Avondale residence, where he would stay "for an extended period of time" during which "narcotics related activity" took place. (*Id.*, PAGEID # 154.) Using information gathered from an electronic monitoring device placed on Mr. Darks' vehicle, Detective Kirk confirmed that he did not live at the Avondale residence. (*Id.*) The monitoring device also revealed that, on one occasion, Mr. Darks went to a different residence known for narcotics activity and stayed there for several hours before returning to the Avondale residence. (*Id.*, PAGEID # 156.)

---

[1] The facts provided herein are drawn from Detective Kirk's affidavit, which supported the challenged search warrant. (Kirk Aff., ECF No. 45-1.)

Based on these observations, the citizen complaint, and the controlled purchases, Detective Kirk obtained and executed a search warrant at the Avondale residence. (*Id.*, PAGEID # 157.) Upon entering, he observed Mr. Darks sitting on a counter in the kitchen. (*Id.*) Mr. Darks was the only individual inside and he immediately fled. (*Id.*) Where Mr. Darks had been seated, Detective Kirk discovered suspected narcotics, "boxes of sandwich baggies, scales with residue, large amounts of needles, a pill press and fentanyl test kits." (*Id.)* He also found two black Apple iPhones. (*Id.*)

Detective Kirk then sought and obtained a warrant to search the two cell phones. In his affidavit in support of searching the phones, he detailed his observations during the initial investigation of the Avondale residence that provided the basis to search the residence. He also explained why he believed that the items found during that search were being used to traffic narcotics. (*Id.*, PAGEID # 158.) Regarding the cell phones, he attested that, based on his training and experience,

> [I]ndividuals involved in criminal activity, to include drug trafficking, will often use and possess one or more cellular devices in order to conduct their drug trafficking activities. … [D]rug traffickers use and possess multiple cellular devices in order to hinder individuals, to include law enforcement, from obtaining the cellular device number in order to identify the user and possessor of the actual device. Drug traffickers will also possess multiple cellular devices to provide them the ability to activate them on a random basis to avoid the association with the drug trafficker's illegal activity and the cellular device. … [The] Affiant believes, probable cause exists to conduct a search and forensic examination for the cellular devices to obtain additional evidence of drug trafficking. … [E]xecution of the search could assist with the identification of [Mr. Darks'] source of supply, customer base

> for the drugs or locations which drugs or drug proceeds are stored or sold.

(*Id.*) Other than identifying the discovery of the two cell phones in the kitchen, these were the affidavit's only statements about cell phones.

A Franklin County Municipal Court Judge issued the warrant, authorizing a forensic search of the contents of both cell phones. (*Id.*, PAGEID # 147.)

## II. ANALYSIS

Mr. Darks advances two arguments in support of excluding evidence obtained from the cell phones. First, he argues that Detective Kirk's affidavit lacked probable cause because it failed to establish a factual nexus between the suspected drug trafficking and the cell phones. (Mot., PAGEID # 143.) Second, he argues that, for the same reason, the good-faith exception under the exclusionary rule does not apply. (*Id.*, PAGEID # 144.)

### A. The affidavit failed to establish a sufficient nexus to support probable cause.

With limited exceptions, law enforcement must obtain a warrant to search a cell phone. *Riley v. California*, 573 U.S. 373, 401 (2014). The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Probable cause is defined as "reasonable grounds for belief, supported by less than *prima facie* proof but more than mere suspicion." *United States v. Abboud*, 438 F.3d 554, 571 (6th Cir. 2006) (citation modified). To support probable cause, an affidavit must contain "particularized facts demonstrating a fair probability that evidence of a crime" will be found in the place to be searched.

*United States v. Elbe*, 774 F.3d 885, 888 (6th Cir. 2014). "There must, in other words, be a nexus between the place to be searched and the evidence sought." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004). This nexus can be inferred from "the type of crime being investigated, the nature of the things to be seized, the extent of an opportunity to conceal the evidence elsewhere and the normal inferences that may be drawn as to likely hiding places." *United States v. Williams*, 544 F.3d 683, 687 (6th Cir. 2008) (citation modified).

To establish a sufficient nexus to search a cell phone for evidence of a drug-related conspiracy, an affidavit must rely on more than the defendant's possession of a cell phone during his arrest and "the affiant's claim that his training and experience suggest such conspiracies are often facilitated by cell phones." *United States v. Merriweather*, 728 F. App'x 498, 506 (6th Cir. 2018) (citation omitted). Courts have found affidavits that include facts about co-conspirators' frequent use of cell phones to communicate or observations about the defendant's use of a cell phone sufficient to tie the device to the alleged criminal activity. *See, e.g.*, *United States v. Bass*, 785 F.3d 1043, 1049 (6th Cir. 2015). On the other hand, an affidavit will be insufficient when it lacks "objective, offense-specific facts … connecting the crimes charged with the specific use of the cell phone and its contents." *See United States v. LaCosta-Franco*, 828 F. Supp. 3d 543, 554 (E.D. Pa. 2026) (collecting cases). However, the Sixth Circuit has not said that an affidavit must include "factual allegations that the phone itself is being used in connection with criminal activity" to establish probable cause. *See United States v. Rolling*, No. 23-1045, 2024

WL 4512532, at *3 (6th Cir. Oct. 17, 2024); *but see United States v. Smith*, No. 21-1457, 2022 WL 4115879, at *15 (6th Cir. Sept. 9, 2022) (no probable cause when the affidavit failed to connect the use of the cell phone to the alleged crime).

When reviewing the sufficiency of a warrant's probable-cause nexus, the Court employs considerable deference to the issuing judge's probable cause determination. *United States v. Sanders*, 106 F.4th 455, 461 (6th Cir. 2024). Regardless of whether the reviewing court would have issued the same warrant, a court should overturn the issuing judge's decision only if the judge "arbitrarily exercised his or her authority." *United States v. Christian*, 925 F.3d 305, 311–12 (6th Cir. 2019) (citation omitted).

Mr. Darks argues that Detective Kirk's affidavit lacks factual allegations connecting the use of cell phones to the alleged drug trafficking operations. (Mot., PAGEID # 144.) In fact, the affidavit's only mention of cell phones is Detective Kirk's discovery of the cell phones at the Avondale residence. There is no statement that he observed Mr. Darks or others visiting the Avondale residence using cell phones, nor is there any indication that the controlled purchases were facilitated by cell phones. Although Detective Kirk explained that, in his experience, drug traffickers often use or possess one or more cell phones to engage in trafficking operations and to evade arrest, "training and experience … cannot substitute for the lack of evidentiary nexus …, prior to the search, between the cell phone and any criminal activity." *See United States v. Ramirez*, 180 F. Supp. 3d 491, 496 (W.D. Ky. 2016). The affidavit offers little more than the fact that the cell phones were at the

Avondale residence moments before Mr. Darks' arrest and Detective Kirk's averment that drug traffickers often use multiple phones.

These generalized statements fail to establish probable cause to search the two cell phones. True, the ubiquity of cell phones in modern communication gives rise to a common-sense assumption that drug traffickers are likely to use cell phones to coordinate their activities in some capacity. But a fair probability that evidence of an alleged crime will be found on a specific cell phone must be based on particularized facts, not assumptions or conjecture. Accordingly, an affidavit must present "sufficient facts demonstrating why the police officer expects to find evidence" on a particular cell phone "rather than in some other place[.]" *United States v. Brown*, 828 F.3d 375, 382 (6th Cir. 2016) (citation omitted). Here, the affidavit lacked facts to support why *these* cell phones would likely contain evidence of the alleged drug conspiracy. Indeed, at the time of the search, "it was unknown who the phones belonged to" (Resp., PAGEID # 168), so the phones equally could have belonged to someone unaffiliated with the suspected drug trafficking activities. Even inferring that the cell phones belonged to Mr. Darks, the affidavit provides no factual basis to believe that he used these (or other) cell phones as part of the alleged drug trafficking operation. *See United States v. Simpson*, 706 F. Supp. 3d 722, 730 (E.D. Ky. 2023), *aff'd*, No. 24-5535, 2025 WL 3535700 (6th Cir. Aug. 4, 2025) (no probable cause where affidavit "lacked specificity" as to the particular devices used to communicate regarding the alleged drug activity and there was "no claim that any particular individual … used one of the seized cellphones" for that

purpose). Common-sense assumptions about cell phone use cannot substitute for the necessary factual basis to infer an evidentiary nexus between the two cell phones and the alleged drug trafficking conspiracy.

Thus, the Court finds that the issuing court erred in concluding that the affidavit established probable cause to search the two cell phones.

**B. An officer could reasonably believe that the affidavit established a sufficient nexus to support probable cause.**

Under the exclusionary rule, evidence obtained in violation of the Fourth Amendment is generally inadmissible at trial. *Herring v. United States*, 555 U.S. 135, 139 (2009). However, there is an exception to the exclusionary rule for evidence seized in objectively reasonable reliance on a search warrant later found to be defective. *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005) (citing *United States v. Leon*, 468 U.S. 897, 918–921 (1984)). As relevant here, the "so-called 'good-faith exception'" to exclusion applies unless the affidavit "is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable." *Merriweather*, 728 F. App'x at 504. (citation omitted). Generally, only reliance on a "bare bones" affidavit "that merely states suspicions, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge" will be found so unreasonable as to warrant exclusion. *United States v. Helton*, 35 F.4th 511, 521–22 (6th Cir. 2022) (citation omitted).

Mr. Darks' challenge to the applicability of the good-faith exception largely mirrors his probable cause argument. He argues that the good-faith exception does

not apply because, without any observations linking his or others' use of cell phones to the alleged drug conspiracy, an officer "could not have had a reasonable and objective belief that the boilerplate language regarding the practices of drug dealers was sufficient to establish probable cause." (Mot., PAGEID # 145.)

While the absence of factual nexus is relevant to both the probable cause and good-faith analysis, the Court "must take care not to confuse a bare bones affidavit with one that merely lacks probable cause." *United States v. Gilbert*, 952 F.3d 759, 763 (6th Cir. 2020). "An affidavit cannot be labeled 'bare bones' simply because it lacks the requisite facts and inferences" to establish probable cause; "rather, it must be so lacking in indicia of probable cause that, despite a judicial officer having issued a warrant, no reasonable officer would rely on it." *United States v. White*, 874 F.3d 490, 497 (6th Cir. 2017). "Even if an affidavit describing a suspect's drug activity does not establish a probable-cause nexus between the place to be searched and the evidence of that activity, the affidavit will avoid the bare-bones label so long as it identifies a 'minimally sufficient' nexus between the two." *United States v. Reed*, 993 F.3d 441, 451 (6th Cir. 2021) (citation omitted). If there is "some connection, regardless of how remote it may have been" between "the criminal activity at issue and the place to be searched," suppression will not be warranted. *Id.* (citation omitted).

Here, the affidavit provided a minimally sufficient connection between the drug trafficking operation and the two cell phones to apply the good-faith exception. Detective Kirk's discovery of two cell phones (when only Mr. Darks was present)

with other evidence of drug trafficking, combined with the many facts regarding the trafficking activity at the Avondale residence and Mr. Darks' participation in that activity, offers some "modicum of evidence" to connect the alleged trafficking operations and the cell phones. *See Merriweather*, 728 F. App'x at 506 (good faith applied when "the affidavit offers several factual allegations that, even if insufficient in isolation and circumstantial in nature, render the officer's reliance on the warrant objectively reasonable"). And Detective Kirk's training and experience "at least provides another reason to trigger" the good-faith exception. *See Reed*, 993 F.3d at 452.

Considered in its entirety, the affidavit presented enough verifiable facts regarding the suspected drug activities at the Avondale residence and the discovery of the cell phones therein "to avoid the bare-bones designation and thus be one upon which an officer can rely in good faith." *Gilbert*, 952 F.3d at 764 (citation omitted). The Court finds that, even though the affidavit did not establish probable cause, Detective Kirk's reliance on the warrant was not objectively unreasonable, so the good-faith exception applies.

**CONCLUSION**

For the reasons stated herein, the Motion to Suppress (ECF No. 45) is **DENIED**.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON, CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**